FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 27 2015 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- x

SDF9 COBK LLC,

Plaintiff,

-against-

AF & AR LLC, ALBERT ZAVUROV, CONGREGATION TIFERETH TORNOR DVORA SFARD, INC., Y. ZAVUROV, E BUSINESS SERVICES, F. ZAVUROVA, N. ZAVUROVA, and NEW YORK CITY ENVIRONMENTAL BOARD BUREAU,

Defendants.

---------------------------------------------------- x

**MEMORANDUM & ORDER**

12-CV-3078 (ENV)(RML)

VITALIANO, D.J.

Defendants Yakov Zavurov, Frida Zavurova, and Nisin Zavurova, tenants residing in the real property that is the subject of this foreclosure dispute, have filed a notice of appeal from the Court's April 27, 2015 denial of their emergency application to enjoin plaintiff SDF9 COBK LLC ("SDF9") from conveying rights and title to the subject property at auction sale.[1] On April 28, 2015, pursuant to Rule 62(c), or alternatively Rule 62(d), of the Federal Rules of Civil Procedure, defendants renewed their application,

---

[1] The Court presumes the parties' familiarity with the facts and history of this case, including the traverse hearing which led to the denial of defendants' motion to dismiss for want of *in personam* jurisdiction, and will not repeat them here.

requesting a stay of the sale, scheduled to take place later that day pending appeal. Despite their failure to file a supersedeas bond in the full amount of the judgment, and with an eye toward avoiding the added expense to plaintiff of another public notice of auction sale, the Court granted defendants' emergency request to the extent that, while permitting SDF9 to proceed with the auction sale, it temporarily restrained SDF9 from transferring any rights, title, or interest in the subject property to the successful bidder without further court order.

The auction sale took place, as scheduled, but, because no bidders other than plaintiff participated, SDF9 obtained ownership rights in the foreclosed property with a winning bid of $1000. (Yellen Decl., ECF No. 72, at 5 n.2). Following the sale, and with plaintiff restrained from transferring title, defendants offered to post a partial supersedeas bond "in an amount that is practicable, which would insulate [SDF9] for any loss incurred while the appeal is pending, in lieu of the full amount of judgment." (Defs.' Reply, ECF No. 73, at ¶ 75). For the reasons and to the extent set forth below, defendants' motion for a stay restricting plaintiff from transferring, rights, title, or interest in the subject property is granted.

## Discussion

"[A] party arguing entitlement to a stay pending appeal, directed to the court which issued the order that is being appealed, faces the Sisyphean task of convincing the court that it was in error and substantially likely to be reversed on appeal." *In re Albicocco*, No. 06-CV-3409, 2006 WL 2620464, at *5 (E.D.N.Y. Sept. 13, 2006). Rule 62(c) confers jurisdiction on a district court to issue a stay of an order denying injunctive relief,[2] and to require the appellant to post a bond, "'to preserve the status quo pending appeal.'" *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312, 2010 WL 5464894, at *3 (E.D.N.Y. Dec. 29, 2010) (citations omitted). Relatedly, Rule 62(d) provides for a stay "as of right" by posting a sufficient supersedeas bond in the full amount of the judgment. *Cohen v. Metropolitan Life Ins. Co.*, 334 F. App'x 375, 378 (2d Cir. 2009); *de la Fuente v. DCI Telecomm., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003). The bond serves three purposes: (1) it ensures the judgment debtor may obtain a refund if he or she is meritorious on appeal (in lieu of paying the judgment before appealing); (2) it mitigates any risk that the judgment debtor may not be able to fulfill the judgment after appeal; and

---

[2] Movants seek dismissal of the action but, part and parcel of the application, is their request that the Court discharge the equitable order it entered permitting plaintiff to auction the subject property as part of the foreclosure judgment.

**(3) it guarantees that the appellee can recover damages caused by any delay incident to the appeal, such as interest and costs.[3] *In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015); *Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988).**

**"Despite these advantages, however, the Second Circuit has recognized that 'an inflexible requirement for impressment of a lien and denial of a stay of execution unless a supersedeas bond in the full amount of the judgment is posted can in some circumstances be irrational, unnecessary, and self-defeating, amounting to a confiscation of the judgment debtor's property without due process.'" *Morgan Guar. Trust Co.*, 702 F. Supp. at 65 (quoting *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1154 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987)). Accordingly, an appellant may post a partial supersedeas bond, or none at all, subject to the district court's approval, if posting the full amount is unnecessary under the circumstances of the case to protect the appellee's interests. *See id.* (citing *Texaco*, 784 F.2d at 1154). Clearly, a "district court has discretion to grant a**

**[3] With regard to coverable costs, the Second Circuit distinguishes a supersedeas bond from what is known as a "cost bond" or "appeal bond." *Adsani v. Miller*, 139 F.3d 67, 70 n.2 (2d Cir. 1998). "A 'supersedeas bond' is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a 'cost bond' is prospective relating to the potential expenses of litigating an appeal." *Id.* (quoting *The Astoria v. Slayne*, 1 F.R.D. 742, 743 (E.D.N.Y. 1941)).**

stay of judgment with no supersedeas bond or with only a partial supersedeas bond if doing so does not unduly endanger the judgment creditor's interest in ultimate recovery." *Id.* (compiling cases). The judgment debtor seeking to reduce the supersedeas bond amount "bears the burden of showing 'specific reasons' why a stay is appropriate." *Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*, No. 09-CV-5087, 2014 WL 2893306, at *3 (S.D.N.Y. June 26, 2014) (citation omitted).

In determining whether to grant a stay without requiring the appellant to post a full-amount supersedeas bond, there are four factors a district court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interests in the proceeding; and (4) where the public interest lies.

*In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (internal quotation marks and citation omitted). "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other." *Id.* In gauging the likelihood of success on appeal, "the necessary level or degree of possibility of success will vary according to the Court's assessment of the other stay factors." *Tummino v. Hamburg*, 936 F. Supp. 2d 198, 201 (E.D.N.Y. 2013)

(citations, alterations, and internal quotation marks omitted). That is, "'[t]he probability of success that must be demonstrated [by appellant] is inversely proportional to the amount of irreparable injury [appellant] will suffer absent the stay.'" *Thapa v. Gonzales*, 460 F.3d 323, 334-45 (2d Cir. 2006) (alteration in original) (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)).

As for the merits of their appeal, in addition to their personal jurisdiction objection, defendants argue that the original plaintiff in this action, Capital One, National Association ("Capital One"), from whom SDF9 derives its rights and interests, has its "nerve center" in New York. This factual contention rests on Capital One's 10-K filings, which indicate that it conducts significant business in New York. Its New York presence, defendants claim, destroys diversity and deprives the Court of subject-matter jurisdiction. (Defs.' Reply, at ¶¶ 43-45). It is a contention with no support at law; Capital One's citizenship for diversity purposes is not even reasonably arguable. Capital One, it appears, is a "national bank[] with [its] main offices located in Virginia. For purposes of diversity jurisdiction, . . . [it is]

**considered [a] citizen *only* of Virginia."[4] *BanxCorp. v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 312 (S.D.N.Y. 2013) (emphasis added) (citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307, 126 S. Ct. 941, 163 L. Ed. 2d 797 (2006) (holding a national banks is not "deemed a citizen of every State in which it conducts its business or is otherwise amendable to personal jurisdiction," but is a citizen of "the State designated in its articles of association as its main office")); *see also Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312, 322 (S.D.N.Y. 2006) (holding, for diversity purposes, that a "national bank is not also 'located' in the state where it maintains its principal place of business[] when that state is different from the state of the national bank's main office"); *OneWest Bank, FSB v. Joam LLC*, No. 10-CV-1063, 2011 WL 6967635, at *3-4 (E.D.N.Y. July 16, 2011) (confirming that a national bank's principal place of business plays no part in determining its citizenship for purposes of diversity jurisdiction).**

**Based on these principles, although it is downright futile to present, as**

---

**[4] Defendants also note that SDF9 is a New York corporation. (Defs.' Reply, at ¶ 9). But, it is a "well-established rule that diversity of citizenship is assessed at the time the action is filed," and "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 111 S. Ct. 858, 112 L. Ed. 2d 951 (1991) (quoting *Wichita R.R. & Light Co. v. Pub. Util. Comm'n of Kan.*, 260 U.S. 48, 54, 43 S. Ct. 51, 67 L. Ed. 124 (1922) ("Jurisdiction once acquired . . . is not divested by a subsequent change in the citizenship of the parties.")).**

defendants intend, their subject matter jurisdiction argument, they still may have preserved their *in personam* jurisdiction arrow in their quiver—and it is centered on a question of fact which, no matter how unlikely, at least offers a prayer for success on appeal.

Moreover, the Court, of course, must consider the other factors, which can more than make up for a slim possibility of success on the merits. *See Thapa*, 460 F.3d at 334-45. Unlike the public interest factor, which, other than the general interest in a fair and just resolution of the matters in dispute, is not implicated at all, *see, e.g., Chevron Corp. v. Donziger*, No. 11-CV-691, 2011 WL 1408386, at *4 (S.D.N.Y. Apr. 6, 2011); *Leinster Inter S.A. v. Botley Ltd.*, No. 09-CV-3874, 2009 WL 5246211, at *1 (S.D.N.Y. Dec. 30, 2009), the second and third factors, which measure irreparable harm to the parties (defined as "certain and imminent harm for which a monetary award does not adequately compensate," *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113-14 (2d Cir. 2003)), do present issues for consideration.

For defendants, there is unquestionably potential irreparable harm in not granting a stay because, "[g]enerally, eviction from one's home constitutes irreparable injury." *Ayyad-Ramallo v. Marine Terrace Assocs. LLC*, No. 13-CV-7038, 2014 WL 2993448, at *4 (E.D.N.Y. July 2, 2014) (collecting cases). Indeed, if there is an "imminent danger" of eviction, "[c]leary, the

[appellants] will suffer irreparable harm by losing their only residence." *Calvagno v. Bisbal*, 430 F. Supp. 2d 95, 100 (E.D.N.Y. 2006). Harm of this nature has the power to tip the "balance of hardships [] decidedly" in the appellants' favor. *Id.* Defendants advance potential eviction as a very real harm, arguing that "the relocation of multiple families comprised of human beings of various ages, including children," (Defs.' Reply, at ¶ 63), which is made more likely by this upset of the status quo, creates significant injury.

On the other side of the coin, and not to be lost in the shuffle, the balancing test recognizes that "creditors certainly have a strong interest in obtaining proceeds from sale of [] assets before they dissipate." *Albicocco*, 2006 WL 2620464, at *4 n.8. However, the circumstances here demonstrate that there is virtually no risk of asset dissipation. Specifically, plaintiff, at the April 28, 2015 auction sale, obtained all rights to the subject property (already fully encumbered by its mortgage) with merely a $1000 bid. Since the sale has been completed (but for closing), and no bidders other than SDF9 found it worth enough to even make a bid, and with no new auction sale costs reasonably in the offing, no obvious harm to plaintiff can come from a stay. Nor can plaintiff genuinely fear that any delay in transferring title to itself could have an adverse effect on the future value of the property. The absence of bidders at the auction sale suggests, flatly, that the property is, when

viewed on the open market, worth *less* than plaintiff's mortgage. The value of the property can only increase over time, not dissipate. The exposure to plaintiff, as creditor, is nil, and, as a consequence, the irreparable harm factors weigh decidedly in defendants' favor.

These are the principal support beams upon which this decision rests. Given the circumstances presented, any balance of the hardships in this case must weigh entirely in favor of defendants. Notwithstanding that there is only the slightest possibility of success, a stay without a substantial supersedeas bond is warranted by the absence of harm to plaintiff. *See Thapa*, 460 F.3d at 334-45. Considering it possible, albeit remotely, that defendants may succeed on appeal, the Court will extend the temporary stay on any transfer of title to the subject property, by plaintiff to itself, so that defendants may seek review from the Second Circuit without jeopardizing their right to remain in possession of their residence.

## Conclusion

For the foregoing reasons, defendants' motion for injunctive relief is granted to the extent that the restriction that this Court imposed on plaintiff's ability to transfer title of the foreclosed property is extended pending appeal to the Second Circuit. As a condition of this relief, defendants are directed to post forthwith a supersedeas bond in the amount of $15,000 for any costs

recoverable under such bond that plaintiff incurs should defendants be unsuccessful on appeal. If defendants fail to perfect their appeal within the time allotted by the Second Circuit, plaintiff is granted leave to seek an order dissolving the stay.

So Ordered.

Dated: Brooklyn, New York
May 15, 2015

s/Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge